**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MID-CONTINENT CASUALTY COMPANY,

Plaintiff,

vs. Case No. 3:06-cv-518-J-32MCR

CLEAN SEAS COMPANY, INC., et al.,

Defendants.

---

**ORDER**

This is a case about insurance coverage for claims against a manufacturer of defective boat paint. Nearly three years ago, the Court examined the relevant policy language and the allegations of the underlying lawsuits and determined what types of claims were and were not covered under the policy. Now all the underlying litigation is complete and the Court is called upon to determine whether the damages awarded by a Massachusetts jury are for claims which the Court has already determined fall within the policy coverage. The Court finds the jury awarded damages for claims that are covered under the policy and the insurer must therefore indemnify its insured for these damages.

## I. Background

Plaintiff Mid-Continent Casualty Company (Mid-Continent) filed its complaint for declaratory judgment on June 7, 2006 seeking a declaration that it did not owe its insured, Clean Seas Company, Inc., a duty to defend nor a duty to indemnify it with regard to three then pending lawsuits brought against Clean Seas in which various parties sued for damages allegedly caused when a boat paint protection product manufactured by Clean

Seas failed. See Doc. 1. On March 27, 2009, the Court issued a ruling on Mid-Continent's motion for summary judgment finding, in relevant part, that the commercial general liability policies Mid-Continent issued to Clean Seas did provide coverage for some, but not all, of the types of damages claimed by the parties in the underlying suits. See Order, Doc. 131. Shortly before the Court issued its ruling, a verdict was reached against Clean Seas in two consolidated underlying lawsuits in Massachusetts. At the time, the Court expected that the parties would be able to apply the Court's summary judgment ruling to that verdict to determine whether and to what extent Mid-Continent had a duty to indemnify Clean Seas for the damages awarded by the jury. That expectation proved optimistic.[1] West Marine Products, Inc. (West Marine) and its insurer, United States Fire Insurance Company (U.S. Fire), the victors in the Massachusetts litigation, filed a counterclaim and crossclaim here against Mid-Continent and Clean Seas; Mid-Continent moved for summary judgment, claiming that West Marine and U.S. Fire were precluded from seeking recovery from Mid-Continent based on their failure to secure a special verdict in Massachusetts delineating covered and non-covered claims; and West Marine and U.S. Fire filed a joint cross-motion for summary judgment against Mid-Continent, claiming that the damages awarded by the jury fall entirely within the coverage of Clean Seas' policy. See Docs. 173, 175, 176 and attachments thereto (parties' summary judgment papers with exhibits). The Court heard oral argument on the cross-motions, the record of which is incorporated by reference. See Doc.

[1]The parties were able to apply the Court's ruling to resolve Mid-Continent's obligations to Clean Seas with regard to the other pending litigation (see Docs. 162, 163). Only the Massachusetts litigation is at issue here.

182.[2]

## II. Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (citing Fed. R. Civ. P. 56(c) (predecessor to 56(a)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." T-Mobile South LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). Upon review of cross-motions, "the Court must determine whether either party deserves judgment as a matter of law on the undisputed facts." Id.

## III. Discussion

West Marine and U.S. Fire seek recovery from Mid-Continent for the damages awarded in the Massachusetts litigation. Mid-Continent argues it is not bound by the Massachusetts jury verdict for two reasons. First, Mid-Continent claims that the parties (West Marine, U.S. Fire, and Clean Seas) are precluded from seeking recovery under the policy because they failed to secure an allocated verdict asking the jury to delineate the types of claims for which it was awarding damages, so the parties could thereafter determine

[2]Following the hearing, the parties agreed to give mediation a final effort but they were unable to resolve the case.

which claims fell within the policy coverage and which did not. Second, Mid-Continent argues that even if it appears that the entirety of the jury's verdict represents claims covered by the policy, Mid-Continent is not bound by the verdict because its interests were antagonistic to and/or it had a conflict of interest with its insured, Clean Seas.[3] Mid-Continent additionally suggests that in the event its motion is denied, West Marine and U.S. Fire's motion should also be denied and the parties should be directed to undertake further discovery.

**A. The Jury's Verdict and Its Meaning Here**

On December 15, 2008, in the United States District Court for the District of Massachusetts, in the case of West Marine Products, Inc. and United States Fire Insurance Company vs. Clean Seas Company, Civil Action No. 03-11659-JGD, the jury rendered a verdict in favor of West Marine and against Clean Seas for $43,709.72 and in favor of U.S. Fire and against Clean Seas for $477,220.10. See Doc. 123 at Ex. B. Thereafter, the court entered judgment with prejudgment interest for a total judgment in the amount of $69,360.17 for West Marine and $757,268.75 for U.S. Fire (stating further that post-judgment interest would continue to accrue). See Doc. 123 at Ex. C.

The Massachusetts court had instructed the jury that "Clean Seas can only be liable for the damages suffered by West Marine's customers if the customer suffered property damage; that is, physical injury to tangible property." See Doc. 123 at Ex. A, p. 18, lines 10-

[3]In their Case Management Report (Doc. 172) the parties suggest that the case be re-styled to reflect that West Marine and U.S. Fire are now the prosecuting parties in this lawsuit. In accordance with that view, Mid-Continent's papers refer to West Marine and U.S. Fire as the "plaintiffs."

13 (emphasis supplied). In further clarifying this explanation, the judge instructed:

> Under what is known as the Economic Loss Doctrine, Clean Seas would not be liable to a West Marine customer if the injuries suffered by that customer was merely the failure of the product to function properly and the product did not cause damage to property other than to the paint itself. In other words, in order for Clean Seas to be liable, West Marine must prove that the paint caused physical harm to the boat and/or inflatable to which it was applied.

Doc. 123 at Ex. A, p. 18, lines 14-22 (emphasis supplied). Following the verdict, Clean Seas moved for a new trial and an amendment of the judgment; the motion was denied and no appeal was taken.

Mid-Continent does not dispute that the language the judge used to instruct the Massachusetts jury would seem to limit any damages awarded to those claims this Court has already found would be covered property damage under the Clean Seas policy, which defines property damage as "physical injury to tangible property, including all resulting loss of use of that property."[4] See Policy, Doc. 1 at Exhibit B, Section IV, Definitions, 17. Mid-Continent argues, however, that the parties did not limit the evidence at trial to covered claims only and, because the jury awarded all the damages West Marine and U.S. Fire sought, some of the damages must have been for non-covered claims. Mid-Continent therefore contends it was incumbent on West Marine and U.S. Fire to secure an allocated

[4]In its earlier summary judgment Order, this Court held that, barring some other basis for exclusion, if the parties proved any of their allegations that the "the failure of the Clean Seas paint resulted in increased marine growth that damaged the hulls of boats; that the paint itself damaged the boat hulls when it was being removed; and that in some cases, especially those involving inflatables, the paint could not even be removed, rendering the boats unusable," such claims would be covered under the policy as property damage. See Order, Doc. 131, at 7, 9.

verdict that would permit the parties post-verdict to apportion the damages awarded between the covered and non-covered claims. Mid-Continent argues that West Marine and U.S. Fire's failure to secure such a verdict bars them from recovering as third-party beneficiaries under the policy.[5]

As noted by Mid-Continent, under Florida law, the burden of apportioning damage following a jury verdict generally rests with the party seeking to recover from the insured, but this is only true "[w]here the judgment includes elements for which an insurer may be liable as well as elements beyond the coverage of the policy." Guarantee Ins. Co. v. Gulf Insurance Co., 628 F. Supp. 867, 870 (S.D. Fla. 1986) (citations omitted) (emphasis supplied); aff'd, 811 F.2d 610 (11th Cir. 1987). In the Guarantee case, two insurance companies (Guarantee and Gulf) had issued professional liability policies to an attorney who was sued for malpractice for various acts of negligence. 628 F. Supp. at 868. Both insurance companies contributed to the attorney's defense because the allegations potentially triggered coverage under both policies. Id. However, when the jury returned a general verdict finding the attorney was negligent without specifying which acts of negligence

[5]Mid-Continent also faults Clean Seas for not securing a special verdict, stating (disingenuously) that Clean Seas "made no attempt to give the jury any guidance as to allocation of damages." Doc. 173 at 14. In fact, Clean Seas made the very attempt to guide the jury that Mid-Continent requested- - asking the judge to submit 80 special interrogatories to the jury. Not surprisingly, the court denied the request. In the parties' joint pre-trial memorandum, Clean Seas also stated that it intended to defend West Marine's claims by showing, inter alia, that the damages "were purely economic in nature," Doc. 173, Ex. A at 6, a position consistent with Mid-Continent's views of the claims. However, no party offered the trial transcript into the record in this case so Clean Seas' efforts in this regard cannot be evaluated except by the result, which Mid-Continent now points to as proof that Clean Seas' position was antagonistic to Mid-Continent's. This point is further discussed below.

he had committed, the insurance companies were unable to determine whose policy covered the claim. Id. In the subsequent action for contribution by Guarantee against Gulf, the court held that Guarantee was barred from recovering contribution from Gulf because Guarantee had failed to secure a verdict which included an apportionment of damages. Id. at 870-71.

In the underlying Massachusetts case here, by contrast, there was no reason for the jury to be asked to return a special verdict which would permit an allocation between covered and non-covered claims because, by virtue of the court's instructions, the jury was limited to awarding damages only for claims that would be within the coverage of the policy.[6] It would have made no sense to ask the jury to specify damages for a type of claim (e.g., economic losses) the court was not permitting it to consider in the first place.[7] Unlike

---

[6]Indeed, the verdict form itself asked the jury whether "West Marine prove[d] by a preponderance of the evidence that it [was] entitled to indemnification from Clean Seas for payments made to customers who suffered property damage." Doc. 173, Ex. C at ¶5 (emphasis added). The jury checked "yes" and wrote in the amounts owed by Clean Seas to West Marine and U.S. Fire ($43,709.72 and $477,220.10 respectively). See Doc. 173, Ex. C at ¶¶ 5-6.

[7]Admittedly, this Court had not yet issued its ruling on summary judgment which held (consistent with the Massachusetts jury instruction) that claims for purely economic damages did not fall within the policy coverage. However, all parties to this litigation agreed that the policy provided coverage for property damage and the argument this Court held just days before the Massachusetts jury was charged reaffirmed that if the Massachusetts jury found property damage as defined within the policy, the claims would be covered. It so happened that the jury instruction regarding property damage mirrored the policy language as to what claims fell within the terms of the policy coverage- - meaning the instruction given to the jury permitted recovery if, and only if, West Marine proved that its customers suffered "physical injury to tangible property." Jury Instruction, Doc. 123 at Ex. A, p. 18, lines 10-13; Policy, Doc. 1 at Exhibit B, Section IV, Definitions, 17. Thus, as instructed, the jury could award damages only if "West Marine [could] prove that the paint caused physical harm to the boat and/or inflatable to which it was applied." Jury Instruction, Doc. 123 at Ex. A, p. 18, lines 14-22.

Guarantee, here the jury's general verdict precisely answered the question necessary to determine coverage.

Mid-Continent recognizes this, of course, but nevertheless argues that the parties were permitted to put on evidence of claims that were not covered under the policy. Thus, says Mid-Continent, because the jury awarded all[8] of the damages West Marine and U.S. Fire asked for, some uncovered damages must have been included in the award. It is true that the allegations of West Marine and U.S. Fire's Massachusetts complaint against Clean Seas included many categories of claims that were not covered by the Mid-Continent policy. See Summary Judgment Order, Doc. 131 at 5-10. Additionally, it is true that some of the customer names listed on the trial exhibit list for the Massachusetts case match names on a sample of customer invoices produced during discovery in this case that appeared to include damages not covered by the policy. Compare Doc. 106 at 7-11 with Doc. 173, Ex. A at 20-26.

None of this, however, means that the jury was permitted to consider evidence of non-covered claims or that it abdicated its sworn duty to follow the court's instructions when rendering a verdict. Indeed, West Marine and U.S. Fire's Massachusetts trial counsel submitted an unchallenged affidavit explaining that the trial judge ruled that West Marine and U.S. Fire could not recover for certain categories of claims alleged in their complaint and the

[8]Or nearly all- - in fact, the damages awards to West Marine and U.S. Fire were $1,938.00 and $3,655.49 less (respectively) than what they were each seeking in their pretrial memorandum. The parties were unable to explain this slight discrepancy because no party introduced the transcript or exhibits from the Massachusetts trial into the record of this case (except a summary list of claims).

damages requested by West Marine and U.S. Fire did not include recovery for those claims nor did the jury award damages for those claims. See Doc. 175, Ex. 1 (Affidavit of Joanne Goulka).[9] Moreover, in addressing Clean Seas' post-trial motion (which argued that the jury failed to limit the damages award to personal (as opposed to commercial) property damage), the trial judge discussed the evidence and testimony and determined that, even though Clean Seas failed to appropriately guide the jury as to how to allocate between types of property damage, the evidence of property damage supported the jury's verdict. See Doc. 173, Ex. D.

In any event, Mid-Continent cannot avoid the Massachusetts judgment through a collateral attack on the jury's verdict in this Court. See Caplan v. Johnson, 414 F.2d 615, 616 (5th Cir. 1969) (explaining that under Florida law, regardless of whether the insurer disclaimed liability or undertook the insured's defense, "[w]here there has been a valid final judgment against the insured, . . . the insurer usually must accept such judgment as conclusively establishing that liability[;] . . . therefore, the insurer is bound by all facts and matters necessarily adjudicated in the original action . . . and . . . is foreclosed from again adjudicating the matters determined in such action") (citations omitted). See also, Commercial Union Ins. Co. of New York v. Reichard, 404 F.2d 868, 869-70 (5th Cir. 1968) (holding that description of the claims provided by the jury charge was sufficient to find the meaning of a general verdict and to therefore hold the insurer liable under the policy).

[9]If Mid-Continent really wanted to try to show that the jury's verdict and trial court's judgment cannot be relied upon to determine the coverage issue, it could have put the Massachusetts trial transcript and all exhibits in the record in this case. It chose not to.

Mid-Continent's reliance on Duke v. Hoch, 468 F.2d 973 (5th Cir. 1973),[10] is misplaced. In Duke, the Court held that where an insurer established that part of a judgment was for noncovered damages, the insured bore the burden "to prove the precise portion of the unallocated verdict" that could be allocated to covered damage. Duke, 468 at 977. Unlike here, however, in Duke, the claims, the record of the trial, and the instructions to the jury all established that the jury's general unallocated verdict included damages for both covered and non-covered claims and the insurer thus easily met its initial burden to show non-covered claims were included in the verdict, thereby shifting the burden to the insured to prove which portion was covered by the policy. Id. at 974-77. Here, the jury instructions limited the jury to considering only liability and damages for covered claims and the judge's post-trial order explained, albeit on a different basis, that the evidence at trial conformed with the instructions. In essence, therefore, Mid-Continent complains, without evidence, that the jury strayed from its mission, thus presenting a collateral attack on the verdict that is not available in this lawsuit.[11] See Caplan, 414 F.2d at 616. Thus, the Court rejects Mid-

---

[10]In Bonner v. Prichard, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent cases decided by the Fifth Circuit before October 1,1981.

[11]In attempting to demonstrate that it has evidence that uncovered claims were included in the verdict, Mid-Continent at oral argument pointed to a footnote in this Court's earlier summary judgment Order in which the Court reviewed a sample of claims files and noted that the files "lend[] some support" to Mid-Continent's position that the bulk of the costs on the invoices are for removal and replacement of paint (which costs would not be covered as property damage). See Doc. 131 at n.13. It was not the Court's position that the bulk of the invoices (which again, the Court had only a sample of) represented non-covered claims- -that was Mid-Continent's position, which the Court noted had "some support" from the sample. Additionally, while the Court went on to explain that proof would be required to establish in each case that the Clean Seas paint caused property damage, upon review of the limited record available from the Massachusetts trial, the Court is satisfied that such a

Continent's primary argument that an allocated verdict was required in the underlying trial and therefore further rejects Mid-Continent's contention that the absence of an allocated verdict precludes West Marine and U.S. Fire from recovering as third-party beneficiaries of the Clean Seas' policy.[12]

---

finding has now been made by the jury through its verdict. (Although the jury had rendered its verdict at the time the Court issued its earlier summary judgment Order, its import was not squarely before the Court and the Court assumed the parties would simply apply the Court's rulings to the jury's verdict to resolve the case without further intervention).

Mid-Continent also argues that West Marine and U.S. Fire have admitted that uncovered claims were included in the verdict by virtue of their having failed to expressly dispute in their papers Mid-Continent "undisputed fact #5" which stated that "Many of the claims files submitted to the jury as evidence show payment of monies by West Marine and/or U.S. Fire to customers for purchasing new paint, refunding the Clean Seas paint, cleaning barnacles, removing the Clean Seas paint and repainting the boats" (followed by citations to six examples of claims files). Doc. 173 at 4. Neither the Local Rules of the Middle District of Florida nor the Federal Rules of Civil Procedure deem a party to have automatically admitted an "undisputed fact" that is not expressly rebutted. Moreover, it is clear from West Marine and U.S. Fire's response that their position is that the jury followed the law as instructed and awarded damages only for covered claims. The Court therefore rejects any effort to ascribe to them a contrary view.

Finally, upon questioning at argument, Mid-Continent admitted that it does not know what evidence was presented to the jury or how it was challenged by Clean Seas because the parties to this case have not reviewed the trial record. Thus, while Mid-Continent can make some assumptions about the evidence, those assumptions do not present a basis to have this Court question the sanctity of a jury verdict. If Mid-Continent had reason to believe the evidence did not support the jury's verdict, its insured could have filed an appeal. At oral argument, Mid-Continent's counsel said it did not pursue that course because the trial judge had so firmly rejected Clean Seas' other post-trial motion. Essentially, Mid-Continent is asking this Court to give it the new trial it failed to ask for either directly or on appeal in Massachusetts.

[12]The Court therefore has no reason to further address the variants on the general rule regarding the burden of proving post-trial the meaning of a jury's verdict, which were discussed at length in the parties' briefs.

**B. Was this an antagonistic defense?**

Mid-Continent's secondary position is that even if this Court determines that the jury returned a verdict for damages for claims that would be covered under the Clean Seas insurance policy, Mid-Continent cannot be bound by that verdict because its interests were antagonistic to those of Clean Seas. As noted above, insurers are generally collaterally estopped under Florida law from relitigating factual issues determined by an underlying verdict. Caplan, 414 F.2d at 616. This is so "because an insurance company is in privity with its insured." State Farm Mutual Automobile Ins. Co. v. Brown, 767 F.Supp. 1151, 1154 (S.D. Fla. 1991). "However, where the interests of an insured and insurer are antagonistic towards each other in the initial tort adjudication, [an] exception to this 'privity' doctrine exists." Id. at 1154-55. In Brown, which involved a shooting, the court held that the interests of the insurer were antagonistic to those of its insured because the insured wanted to show the gun went off accidentally (which would best ensure the claim would be covered by his insurance policy with State Farm), whereas State Farm would have wanted to show that the gun was fired intentionally (thereby placing the claim outside the policy coverage). Id. Because of their antagonistic interests, the court found they were not in privity and State Farm was not collaterally estopped from challenging the underlying factual findings in a later coverage action. Id. at 1155. Likewise, in Landmark American Insurance Company v. Reli Title, Inc., Case No. 2:08-cv-875-FtM-29DNF, 2009 WL 3202466 (M.D. Fla. Oct. 2, 2009), the court found the interests of the insurer were antagonistic to those of its insured (and therefore the insurer would not be bound by the underlying judgment) where the insured would hope to secure coverage by arguing the acts were negligent, while the insurer would

wish to avoid coverage by showing its insured acted intentionally.

Mid-Continent defended Clean Seas in Massachusetts under a reservation of rights and hired independent counsel to represent Clean Seas. Clean Seas was unsuccessful in obtaining a special verdict and, according to Mid-Continent, Clean Seas failed to defend the case in a manner which would give the jury a meaningful basis to limit the damages. For these reasons, Mid-Continent argues that it was not in privity with its insured. These facts, however, are unlike those in either Brown or Landmark. Brown, Landmark, and most of the other cases upon which Mid-Continent relies, involved alternative theories of liability, one of which would be covered, and the other not. Here, Mid-Continent and Clean Seas both hoped to show that no property damage occurred- - a win for Clean Seas would be a win for them both. Moreover, Clean Seas cooperated with Mid-Continent's efforts to direct the defense, and Clean Seas attempted to secure the special verdict Mid-Continent requested, although the judge found it unnecessary. While Mid-Continent now criticizes Clean Seas' defense in failing to put on more evidence to try to limit the damages, this hindsight argument fails to show a conflict. Indeed, had the jury awarded no damages, Mid-Continent would likely deem it to have been a brilliant strategy. The Court finds there was no antagonism such as would create an exception to the general rule of privity between the insurer and its insured and finds Mid-Continent is bound by the Massachusetts verdict.

## IV. Remaining Matters

### A. Accounting for the Deductible (Crossclaim/Counterclaim)

West Marine and U.S. Fire moved for summary judgment against Mid-Continent. Though not raised in their motion, they also filed a crossclaim against Clean Seas and

counterclaim against Mid-Continent seeking a declaration as to the parties' rights regarding the payment of the deductible. See Doc. 164 (Count II).[13] The Court's earlier summary judgment Order had established that each customer's covered claim triggered payment of a separate $1000 deductible (see Doc. 131 at 10-14); the question here involves the accounting for it.

The crossclaim/counterclaim explains West Marine and U.S. Fire's view that Mid-Continent should pay the damages in full and make its own effort to collect the deductible from its insured, Clean Seas. The policy language states that Mid-Continent's "obligation . . . to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts . . . applicable to such coverages." See Policy, Doc. 1 at Ex. B, p. 6. This language supports a finding that Mid-Continent's obligation is only for the damages in excess of the $1000 deductible as to each claim, and is not preconditioned on Clean Seas' payment of the deductible. In making rough calculations as to the possible damages Mid-Continent might owe, the Court explained its view on this issue at the hearing without objection from West Marine or U.S. Fire. Mid-Continent, therefore, is not liable for any claim under $1000 and is only liable on the remaining claims to the extent they each exceed $1000; its obligation is triggered by the Massachusetts judgment, without regard to whether

[13]Count I is a counterclaim against Mid-Continent only, claiming that Mid-Continent breached its obligation under its insurance contracts with Clean Seas to pay the damages awarded by the Massachusetts jury, thereby damaging West Marine and U.S. Fire as third-party beneficiaries of the insurance contracts. The ruling on West Marine and U.S. Fire's motion for summary judgment resolves this issue.

Clean Seas has paid any deductible.[14]

**B. Mid-Continent's Other Affirmative Defenses**

In responding to West Marine and U.S. Fire's cross-motion for summary judgment, Mid-Continent asserts that if its own motion for summary judgment is denied, several of its affirmative defenses would still bar entry of judgment for West Marine and U.S. Fire. Although some of Mid-Continent's affirmative defenses are resolved by the summary judgment ruling here (the first, second, fifth, sixth, and seventh affirmative defenses), others require limited discussion. Mid-Continent's third affirmative defense, which claims Mid-Continent has no duty to indemnify U.S. Fire for claims U.S. Fire paid that were not covered by West Marine's policy with U.S. Fire is rejected as these sums are owed by Mid-Continent's insured, Clean Seas, regardless of who paid the claims of the customers. Mid-Continent's fourth affirmative defense states that it has no duty to pay claims that fall outside the years of policy coverage (two policies which together cover the time period of February 15, 2003 through February 15, 2005). West Marine purchased the Clean Seas products in February and March 2003 for resale in its stores, received its first customer complaint in May 2003, made its first demand on Dolphonite (the Clean Seas distributor) in July 2003, and filed suit against Dolphonite and Clean Seas in February 2004. See Doc. 1, Ex. G; Doc. 57,

---

[14]West Marine and U.S. Fire did not seek summary judgment against Clean Seas but, in light of the Court's rulings in this Order, there is no issue left to try on the crossclaim. Additionally, although Clean Seas did not file papers related to the summary judgment issues, it answered the crossclaim (Doc. 168) and its counsel presented argument at the summary judgment hearing, taking positions that have been considered and addressed in this Order. If West Marine and U.S. Fire are not seeking judgment against Clean Seas, they should advise the Court as to their intentions with regard to the prosecution of the crossclaim.

Ex. A. The Court is therefore satisfied that the claims paid by West Marine and its insurer, U.S. Fire, fell within the Clean Seas coverage period with Mid-Continent.[15] Mid-Continent's eighth affirmative defense raises the deductible issue discussed above and further notes that it is not obligated to pay interest on the deductible amounts. The Court agrees with Mid-Continent and notes that West Marine and U.S. Fire did not present any objection when this was discussed during the hearing.

**V. Calculations of Damages**

In light of these rulings, and there being no remaining matters,[16] all that is left is to calculate the damages. The Massachusetts jury awarded damages to West Marine in the amount of $43,709.72 and damages to U.S. Fire in the amount of $477,220.10.

The jury's award to West Marine was based on a trial exhibit showing payment of 16 claims totaling $43,709.72. See Doc. 136, Ex. C. Because Clean Seas' policy has a $1000 per claim deductible, Mid-Continent is not liable for the two claims of less than $1000 (one for $828.99 and one for $718.00), nor would it be liable for the first $1000 on any of the other 14 claims. Thus, subtracting the two smaller claims ($1,546.99) and $14,000 in deductibles

---

[15]Moreover, in the unlikely event that any of the claims actually did fall outside the coverage period, it was incumbent upon Mid-Continent to bring that matter to the Court's attention in the context of at least one of its two summary judgment motions. When asked about this during argument, Mid-Continent suggested that further discovery would be needed to resolve it. However, discovery closed in this case in June 2008, no one has suggested that the relevant claims files were unavailable (indeed portions of some of them were filed in this case in May 2008) and Mid-Continent's own motion for summary judgment argued that this Court should not entertain any additional evidence. In short, Mid-Continent has not presented a sufficient basis for the Court to hold open the record for this issue.

[16]Mid-Continent's Motion to establish pretrial deadlines (Doc. 186) is denied as moot in light of the Court's rulings.

for the remaining claims, Mid-Continent is liable to West Marine for $28,162.73.

As to U.S. Fire's claims, the jury's award was based on a trial exhibit showing payment of 242 claims totaling $477,220.10. See Doc. 187. Of these, 64 are for less than $1000 (totaling $46,628.65). Subtracting these claims plus $1,000 for each of the remaining 178 claims ($178,000) results in liability on the part of Mid-Continent to U.S. Fire in the amount of $252,591.45.

The Massachusetts judgment included pre-judgment interest at the rate of 12% per annum which accrued from February 5, 2004 through the date of the judgment (December 24, 2008) in the amounts of $25,650.45 due to West Marine and $280,048.65 to U.S. Fire. See Doc. 123, Ex. C. Mid-Continent's proportionate allocation of these sums is $16,526.91 to West Marine and $148,229.07 to U.S. Fire. The Massachusetts judgment also provided that post-judgment interest would accrue from December 24, 2008 forward as provided by law. These sums will need to be calculated for inclusion in a final judgment from this Court.

## VI. Conclusion

Accordingly, it is hereby

**ORDERED**:

1. Mid-Continent's motion for summary judgment (Doc. 173) is denied.

2. West Marine and U.S. Fire's motion for summary judgment (Doc. 175) is granted to the extent that the Court finds the Massachusetts jury's verdict and judgment thereon is for property damage as described in the Mid-Continent policy; therefore Mid-Continent is liable on its policies as stated herein.

3. West Marine and U.S. Fire shall prepare and file no later than **April 16, 2012** a proposed final judgment consistent with the rulings in both this Order and the Court's earlier Order on summary judgment (Doc. 131) that includes awards for damages and any necessary declaratory language, ensuring that the remaining claims of the complaint, crossclaim and counterclaim are addressed to the extent appropriate, conferring with both Mid-Continent and Clean Seas to reach agreement on the language. In the event the parties cannot agree on the proposed language, Mid-Continent and/or Clean Seas may submit their own version of a proposed judgment by the same date.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of March, 2012.

TIMOTHY J. CORRIGAN
United States District Judge

s.
copies to counsel